JUSTICE TRIEWEILER
concurring in part and dissenting in part.
I concur with the majority’s conclusions that there was sufficient evidence to sustain the defendant’s conviction of aggravated assault, and that based on the record available to us, the allegation of prosecutorial misconduct is not established.
I dissent from the majority’s conclusion that there was sufficient evidence to sustain the jury’s verdict that the defendant assaulted Chellsi Sventgard.
Walsh was involved in one fight with one victim (albeit the odds were unfair and a brutal beating was administered). As a result, he has been convicted of four separate crimes, even though, based on the same facts now known, one charge was originally deemed appropriate. Presumably, based on the majority’s conclusions, if more of Walsh’s friends had been passing by and stopped to participate in the beating, and if more people had witnessed the beating, Walsh could be charged with an endless number of additional crimes. Applying the same theories applied to Walsh’s prosecution, the average hockey player in the NHL would spend the rest of his life behind bars.
Section 45-5-201, MCA, provides, in relevant part, that:
(1) A person commits the offense of assault if he:
(d) purposely or knowingly causes reasonable apprehension of bodily injury in another.
There was no evidence that Walsh did anything to purposely or knowingly cause Chellsi to fear that she personally would be injured. She remained in Lecce’s vehicle at all times during Lecce’s altercation with Walsh. During that time, the doors of the vehicle were locked. At no time did Walsh threaten her. In fact, he said nothing to her. He did not approach the vehicle in a threatening manner; nor did he make any other threatening gesture toward her. Her mother left the vehicle during Lecce’s altercation with Walsh, and moved about freely without any threat being made to her physical well-being. In sum, there was no evidence that Walsh either said or did anything which would support a finding that he knowingly or purposely caused Chellsi to fear that she would be personally harmed.
The majority cites various facts in support of its conclusion. However, they all relate to what Chellsi observed Walsh or Driscoll do in relation to some third person. None of the facts demonstrate any *79 aggressive act toward Chellsi, and none of the facts relied on by the majority distinguish her from any other person who witnesses a fight between two other people.
The concurring opinion suggests that this case is distinguishable from a hockey brawl or a barroom fight because of the age of the alleged assault victim and the fact that she was returning from a picnic when the alleged assault occurred. Based on the result-oriented approach advocated by the concurring opinion, the amorphous test for assault is simply whether the majority finds the defendant’s conduct sufficiently offensive.
The concurring opinion wanders further astray by suggesting that in lieu of any aggressive action toward Chellsi during the defendant’s altercation with Lecce, it was sufficient that the State proved defendant tailgated the vehicle in which Chellsi was a passenger with his bright lights on and made obscene gestures at the Lecce vehicle. I am sure the general public will be surprised to learn that tailgating and obscene gestures can serve as the basis for a misdemeanor assault conviction. Furthermore, there is no evidence that Walsh was even aware of Chellsi’s presence in the Lecce vehicle while he followed it, much less that by tailgating and gesturing to the vehicle he “purposely or knowingly” caused her fear of bodily injury. Finally, the State’s charge of assault was not based on tailgating or gesturing. It was based simply on the fact that Walsh fought with Lecce in Chellsi’s presence. The charging document states that:
On or about the 11th day of May, 1994, in Ravalli County, Montana, the defendant Cory Scott Walsh purposely or knowingly engaged in conduct which placed C. Sv., a youth, in reasonable apprehension of bodily injury by exiting the vehicle which had caused the car in which she was riding to stop and then violently attacking and beating without apparent reason the driver of the car in which she was riding, all in close proximity to C. Sv., which was in violation of the above statute.
While the concurring opinion strikes an admirable blow for chivalry, it is a clear setback for predictable application of the law.
The majority relies on State v. Keup (1987), 228 Mont. 194, 741 P.2d 1330. However, there is no similarity between the facts in Keup and those in this case. In Keup, the defendant actually fired a gun in the direction of the victim. The victim was actually endangered and had reason to fear'that she would be injured. Chellsi was not similarly endangered in this case.
*80 Although the number of crimes for which Walsh was convicted based on one fight is not the issue that has been raised, the result in this case presents some bizarre possibilities. Distilled to its essence, the crime that Walsh is guilty of is an unfair fight which resulted in potentially serious injury to his victim.
However, as a consequence of an unfair fight, Walsh has now been convicted of two felonies and two misdemeanors. He was convicted of one felony because of his own participation. He was convicted of a second felony because of another person’s participation. He was convicted of a misdemeanor because of a third person’s participation. And, he was convicted of a second misdemeanor because of what a witness to the fight observed.
If this case sets any precedent, the opportunities for prosecution of people involved in barroom brawls is endless. For example, if five people beat up one person, each could be charged with five felonies and sentenced to twenty years for each felony conviction. If fifty people witness the beating, each defendant could be charged with fifty counts of misdemeanor assault and sentenced to another six months for each misdemeanor conviction. All sentences could be imposed consecutively, and each participant in the barroom brawl could end up being sentenced to 145 consecutive years for his or her participation.
I doubt very much that there was ever a legislative intention that our criminal statutes be piled on in this fashion. The purpose of misdemeanor assault statutes is to punish people who knowingly harm or threaten harm to someone else.
The purpose of accountability statutes is to punish people who, in combination with someone else, cause serious bodily harm when it cannot be determined who actually inflicted the blow that caused the harm.
The inconsistency of the jury’s verdict is apparent in this case when analyzed in terms of the only serious bodily harm that was inflicted.
Walsh’s conviction for aggravated assault was affirmed on the basis that there was substantial evidence from which a jury could have found that one of his blows knocked out one of Lecce’s teeth. However, he was also convicted of accountability for aggravated assault based on blows struck by Joshua Vieth. If the only serious bodily injury that Lecce sustained was the loss of his tooth, how could two separate people on two separate occasions have caused the same serious bodily injury? If both Walsh and Vieth did not cause separate serious bodily injuries, then how could Walsh have been convicted of two felonies? The whole series of developments in this case, beginning *81 with an information which charged only aggravated assault; a subsequent amendment which added accountability for aggravated assault; and a second amendment which added charges of two misdemeanors, when all the information on which the amendments were based was available to the State at the time of the original information, smacks of prosecutorial mischief.
Although our decision is limited to the issues presented to us, the fact that the majority gives its implied stamp of approval to overcharging and over-conviction in this manner by concluding that witnesses to fights are now separate victims, will assuredly lead to future charges which have more to do with coercing plea agreements than with honestly stating the nature of an accused’s alleged criminal conduct.
I am not suggesting that we canonize Walsh, but was it really necessary to convict him of four crimes for one beating?
Call me soft, but I have an idea which, if considered and acted upon, would restore some sanity to the criminal justice system. It goes like this. One defendant who administers one beating to one victim who sustains one serious injury is subject to conviction for one felony, punishable by imprisonment for a period of twenty years and a fine of up to $50,000. I know that my idea probably does not satisfy the mob instinct to extract a pound of flesh from Walsh for his abusive and uncivilized conduct; however, it might restore some predictability, rationality, and proportionality to our system of criminal laws. I hope the majority will not reject it out of hand.
For these reasons, I dissent from that part of the majority opinion which concludes that there was sufficient evidence to affirm the jury’s finding that Cory Scott Walsh assaulted Chellsi Sventgard.
JUSTICE HUNT joins in the foregoing concurring and dissenting opinion.